## **STATEMENT OF FACTS**

Since approximately February 2013, the Federal Bureau of Investigation (hereinafter "FBI") has conducted an investigation into the activities of a network of narcotics traffickers based in the state of Maryland and the Washington, D.C. metropolitan area.  Your affiant has participated in this investigation, which has included controlled purchases of narcotics, analysis of toll records and pen register data, extensive physical surveillance, and court authorized interception of wire and electronic communications.  During the course of the investigation, the FBI applied for and obtained authorization to conduct wire and electronic surveillance on cellular telephones being used by Juan Floyd (hereinafter "Floyd").  The affidavits in support of these applications were based upon a number of sources and types of evidence, including but not limited to, court-authorized wire interceptions; controlled purchases of narcotic; seizures from drug customers and drug couriers utilized by Floyd and his narcotics supplier from Texas, as well as based upon other narcotics seizures and evidence.  The investigation has revealed that Floyd's narcotic's supplier in Texas exported large quantities of heroin, cocaine, cocaine base, and marijuana from Texas to Floyd in the Washington, D.C., metropolitan area, whereupon Floyd redistributed the drugs to local drug customers for further resale in Maryland and Washington, D.C.

As a result of the investigation, law enforcement learned that WILLIAM DAVID HILL, also known as "Tank," (hereinafter "HILL") was a customer of Floyd.  Throughout the course of the investigation, agents intercepted numerous calls in which Floyd discussed with HILL, in coded language, narcotics dealings with Floyd.  Agents also surveilled HILL meeting with Floyd for the purposes of conducting a narcotics transaction.  For example, on July 8, 2013, at approximately 1:56 p.m., in activation 11508 on cellular telephone number (202) 300-1403 (hereinafter Target Telephone #2), Floyd called HILL.  Floyd used Target Telephone #2 during the course of the investigation.  HILL said, "I was trying to see you, right?  Trying to holla at you.  But I got one other thing to do, right?  What about late this evening?"  Floyd said, "Yeah, that's cool."  HILL said, "About uh, six o'clock?"  Floyd said, "Yeah, just hit me . . . call me."  HILL said, "Alright.  Look, I'm going to tell you where I live at, man, listen . . . I live on Twenty-Eighth Street, Southeast.  Sixteen-twenty-six."  Floyd repeated the address back to HILL, and said, "I got you."

That same day, agents initiated surveillance of Floyd at approximately 2:00 p.m. in the vicinity of his residence on Lakeside Drive in Greenbelt, Maryland.  At approximately 2:23 p.m., agents observed Floyd enter the driver's seat of his Buick LeSabre, which was parked near his residence.  Agents used vehicle tracking technology to assist with surveillance.[1]  Agents maintained surveillance of Floyd as he drove his Buick to addresses in Washington, D.C., and Temple Hills, Maryland.  At approximately 5:19 p.m., in activation 11539, on Target Telephone #2, HILL called Floyd.  Floyd said, "You in the house?"  HILL said, "Yeah."  Floyd said, "Alright, I'm coming that way."  HILL said, "Hey, my new spot now, not what-cha-call-it."  Floyd said, "Yeah, yeah, I know."  Shortly thereafter, agents observed Floyd in his Buick LeSabre

---

[1]   Authorization was obtained from a federal magistrate judge in Greenbelt, Maryland, to place a vehicle tracking device on Floyd's vehicle.

parked on the side of 28th Street, Southeast, Washington, D.C., in front of the apartment building located at xxx xxxx xxxxx, xxxxxxxx. A bald, black male was sitting in the front passenger seat of the Buick. At approximately 5:22 p.m., agents observed HILL exit the front passenger seat of FLOYD'S Buick and walk toward an apartment building located at xxxx xxxx xxxx, xxxxxx. FLOYD drove away from the area. Based on my training and experience in this investigation and others, I believe Floyd met HILL for the purpose of completing a narcotics transaction.

On August 31, 2013, at approximately 1:06 p.m., in activation 2615, Floyd called HILL on a cellular telephone that, based upon the investigation, was used by HILL (hereinafter "HILL's telephone"). HILL said, "I'm uptown, right. I'll be back over here probably about four, five. I'll call you soon as I get in the house or when I am on my way, right. I just came up here to bump around try to tie up some lose ends at this mother fuckin uh, up the street playground you know." HILL continued, "Cause, uh, they supposed to have something up here and uh I gotta see a few people anyway so about 4 o'clock. I'll probably leave from here about 2 cause I gotta go back to SE and, uh, see a couple people that, uh, are supposed to put something in the till you know what I am saying?" Floyd replied, "Yeah." HILL said, "So, uh, I'll call you about 4 -4:30, you hear?" Floyd agreed and HILL said, "Or I should at least be in the house so if you are in the neighborhood just, just stop by. I will see you back on this end in the house by that time." At approximately 7:48 p.m., in activation 2661, Floyd called HILL on HILL's telephone, who advised Floyd that he would be home in forty minutes. At approximately 10:06 p.m., in activation 2673, Floyd called HIL on Hill's telephone again. HILL said, "I'm on my way in the house now. I be there in about ten minutes." Floyd replied, "Give me about twenty. I'm close. I'm near you." HILL said, "alright." At approximately 10:43 p.m., in activation 2676, Floyd called HILL and said, "come on out, homes." A review of court-authorized geolocate data for Floyd's telephone placed Floyd in the vicinity of the same address where Floyd had previously met HILL. While agents did not surveil the meeting, I believe that Floyd and HILL met for the purpose of conducting a narcotics transaction.

On January 24, 2014, law enforcement executed a search warrant at xxxxx xxxxx xxxxx. A search of that location was conducted and agents recovered a .380 semi-automatic pistol loaded with ammunition, heroin, packaging material, cutting agents, measuring spoons, digital scales, and recent mail matter addressed to Hill.  A portion of the suspected heroin field test positive for heroin.   Hill was present at that location when the search warrant was executed, and was arrested. Hill said that he did not know anything about the gun and that it did not belong to him.   A female also present when the search warrant was executed said that the gun belong to her.

SPECIAL AGENT ULRIKE KUCHARZYCK
FEDERAL BUREAU OF INVESTIGATION
  WASHINGTON FIELD DIVISION

SWORN AND SUBSCRIBED BEFORE ME ON THIS _____ DAY OF JANUARY, 2014.

DEBORAH A. ROBINSON
U.S. MAGISTRATE JUDGE